UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEPHEN MARVIN, an individual,

Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurer licensed to do business in the STATE OF WASHINGTON; CLAUDIO A. COPAT and "JANE DOE" COPAT, and the marital community of them composed,

Defendants.

CASE NO. C 14-5506 KLS

ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 19. For the reasons set forth below, that motion is GRANTED.

FACTS

On July 30, 2012 Stephen Marvin met with Claudio Copat, an insurance agent for State Farm Fire and Casualty Company, to discuss obtaining insurance on a house Mr. Marvin recently

purchased, a 2002 Chevrolet Silverado and four motorcycles. Mr. Copat emailed insurance quotes to Mr. Marvin on July 30, 2012. Dkt. 20-1.

On August 24, 2012 Mr. Marvin went to Mr. Copat's office to apply for insurance. Mr. Copat was not in, but one of his employees took the application and bound the risk on the house. Mr. Marvin also obtained a policy on the 2002 Silverado but did not obtain insurance for the four motorcycles. Dkt. 20-1, p. 3 (Declaration of Claudio Copat, dated February 19, 2014). Mr. Marvin paid the annual policy premium for both the homeowners and auto insurance policies. Dkt. 23. The homeowners policy, which had an effective date of August 27, 2012, provided dwelling coverage of up to $167,000 and personal property loss of up to $125,250 with a one percent deductible. Dkt. 23, p. 2.

Sometime in August 2012 Mr. Copat inspected and photographed Mr. Marvin's house. According to Mr. Copat, he "could see that the roof would not meet State Farm underwriting guidelines. The shingles were warped and had a lot of mildew." Dkt. 20-1, p. 3. These photos were taken as they had to be an attachment to the application sent to State Farm for their review and determination as to whether to accept or deny the risk. Dkt. 26-1, p. 12 (Deposition of Claudio Copat).

State Farm sent a cancellation letter dated October 18, 2012 (Dkt. 20-1, p.6) to Mr. Marvin which showed a cancellation date of December 9, 2012 at 12:01 a.m. The cancellation letter noted the following:

> We cannot provide coverage because of the deficiencies in the physical condition of the property. Items specifically noted include:
>
> - age and condition of the roof
> - peeling paint on exterior siding and fascia

Mr. Marvin was urged to obtain insurance to prevent any lapse in coverage.  He was also advised that a premium refund was being sent separately.

Following receipt of this letter, Mr. Marvin states that he attempted to contact Mr. Copat by phone "to discuss the cancellation, as well as my intention to address the roof and peeling paint so that the policy could remain in effect, but Copat did not quickly return my call." Dkt. 23, p. 2 (Declaration of Stephen Marvin dated March 2, 2015).

Mr. Marvin did contact Pemco Mutual Insurance agent, Joan Bonner, to discuss obtaining a homeowners insurance policy.  Pemco provided a quote with a proposed policy period of 10/31/12 to 10/31/13.  Dkt. 23, p. 13.  In the October 31, 2012 email which had the quote attached, Ms. Bonner asked Mr. Marvin to "forward some photos of the roof and a photo of the back deck you mentioned that after cleaning was actually in good condition." Dkt. 26-1, p. 12.  Ms. Bonner sent a subsequent email dated November 7, 2012 as a follow-up as she had apparently not heard back from Mr. Marvin.  Dkt. 26-1, p. 3.

On November 9, 2012 Mr. Copat returned Mr. Marvin's phone call regarding the upcoming cancellation of the policy.  According to Mr. Marvin, he "explained that I would be working on the roof in the spring of 2013, and painting the house in the summer of 2013, and that I received a quote from Pemco, but wanted to keep my homeowners insurance policy with State Farm because I also had an auto policy with State Farm.  I wanted to keep all insurance policies with the same company." Dkt. 23, p. 3.  Further, in his declaration Mr. Marvin testified that "Copat told me that the policy could remain in place before the work on the roof was done, but that the deductible would be increased from one percent of the dwelling coverage amount ($1,670.00) to two percent (2%) of the dwelling coverage amount, or $3,340.00 until the work on the roof was done.  I told Copat that I accepted the revised policy terms." Dkt. 23-3.

In Mr. Marvin's Examination Under Oath, taken on July 18, 2013, defense counsel read the following November 9, 2012 entry from State Farm's underwriting file: "Policyholder looking at spring 2013 for new roof. Painting, summer 2013. Policyholder purchased in 2012. Would consider keeping with the contract or work order from roofing contractor and 2 percent deductible until the roof is replaced." (Dkt. 20-1, p. 28). On that date, July 18, 2013, Mr. Marvin agreed that this entry was consistent with his memory of what was discussed. He also agreed that he never provided a contract or work order with regard to the roof. Dkt. 20-1, p. 28. Mr. Copat testified in his deposition that he was the source of the information for the November 9th entry. Dkt. 26-1, p. 20 - 21. Mr. Copat agrees he did not contact Mr. Marvin after November 9th as he felt Mr. Marvin still had time to provide the documentation needed in order to continue coverage. *Id.* at p. 24.

Mr. Marvin also asked Mr. Copat what he should do with the check for the unearned portion of the premium. Mr. Copat told him he would check with State Farm and get back to Mr. Marvin. Mr. Marvin never heard back from Mr. Copat and he has not cashed the $396.84 check.[1]

Mr. Marvin testified in his declaration that he relied on Mr. Copat's representation that the policy would remain in place with the increased deductible until the roof was replaced and that he changed his course of action and did not pursue the homeowners quote from Pemco. Dkt. 23, p. 3.

Mr. Copat testified in his declaration that he met with Mr. Marvin in November. According to Mr. Copat he told Mr. Marvin "that based on my experience, underwriting would

---

[1] The Court notes that Mr. Copat has a different recollection as to what he told Mr. Marvin regarding the refund check. For purposes of this summary judgment motion, the Court is relying on the testimony of the non-moving party, Mr. Marvin.

not reissue the policy unless he provided documentation from a licensed contractor stating either that the roof had a remaining life of at least five years, or that the contractor would replace the roof within 60 days." Dkt. 20-1, p. 3. Mr. Marvin advised Mr. Copat that he did not have money for the roof and that he would not obtain documentation from a contractor. Mr. Copat agreed, at Mr. Marvin's request, to contact underwriting to see if they would change their minds. Mr. Copat also told Mr. Marvin that unless he "received something from State Farm in writing stating that they were going to cover the risk, Mr. Marvin needed to move forward with the understanding that a cancellation was in place." Dkt. 20-1, p. 3 – 4. Mr. Copat did contact underwriting and they "would not reconsider the decision to cancel the policy without documentation from a licensed contractor indicating either that the roof had a remaining life of at least five years, or that the contractor would replace the roof." Dkt. 20-1, p. 4. According to Mr. Copat, once State Farm makes a decision on an application that Mr. Copat can no longer change that decision. "It would have to come from State Farm in a written form that coverage is extended." Dkt. 26-1, p. 15.

On or about December 25, 2012 a trailer containing numerous motorcycles and other personal property and equipment owned by Mr. Marvin was stolen from his home. He filed a claim with State Farm on December 27, 2013. State Farm denied the claim on August 29, 2013 on the basis that the policy had been cancelled by State Farm prior to the date of loss.

As part of its investigation, after Mr. Marvin filed his claim against State Farm, State Farm sent Mr. Marvin a letter dated April 17, 2013. Dkt. 26-1. In the letter, State Farm advised Mr. Marvin that there existed the following coverage issue: "It is questionable whether there was a policy in force at the time of the loss." State Farm advised that it would continue to investigate and in doing so was "not waiving any of the terms, conditions, or policy provisions in the policy." As part of its investigation, State Farm hired counsel to conduct the plaintiff's

Examination Under Oath as authorized by the policy (Dkt. 20-3, p. 25 – 26, Policy Booklet) and by RCW 48.18.460.

CLAIMS MADE BY PLAINTIFF

Plaintiff asserts liability against the defendants on the following grounds: (1) agency law binds State Farm to the contract made by Mr. Copat with Mr. Marvin; (2) promissory estoppel; (3) breach of contract; (4) bad faith. Defendants move to have all of Plaintiff's claims dismissed. In the alternative, they request an order from this court finding that the policy of insurance provided no coverage for the plaintiff's motorcycles and that the coverage for the trailer is limited to no more than $1500.00.

In his Response, plaintiff admits there is no coverage for the motorcycles and further admits that coverage for the trailer itself (exclusive of its contents) is limited to no more than $1500.00. Based on this admission, the Court GRANTS the Defendants' motion as to these two issues.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (2986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of fact exists, no longer precludes the use of summary judgment. *See*

*California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *See Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weight evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3d 547, 549 (9th Cir. 1994)(citing *O'Melveny & Meyers,* 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 60 F.3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *It. At* 345; *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 667 (9th Cir. 1980).

## AGENCY LAW

Plaintiff asserts that State Farm is bound by Mr. Copat's "promise" on the basis of agency law. In particular, he alleges that Mr. Copat had apparent authority to bind State Farm "to the modification and continuation of the homeowner's policy." Dkt. 22, p. 8 (Defendant's Response). Plaintiff also asserts, without providing any authority, that

> "[b]y authorizing Copat to contract for insurance on State Farm's behalf, State Farm also granted Copat to conduct all other acts necessary for the formation of insurance contracts, including discussions regarding insurance modifications.

Dkt. 22, p. 8. Plaintiff supports this position by stating that "Marvin reasonably assumed that Copat could act on State Farm's behalf because of Copat's and State Farm's objective manifestations." Dkt. 22 at p. 9. Plaintiff fails, however, to identify what, if anything, State

Farm did to convey the impression to Mr. Marvin that Mr. Copat had the authority to modify the cancellation letter and continue the homeowner's policy.

It is a well-established rule that apparent authority of an agent can only be inferred from the acts and conduct of the principal. *Lamb v. General Associates, Inc.*, 60 Wash. 2d 623, 627, 374 P.2d 677 (1962). Further, with regard to apparent authority, the extent of an agent's authority cannot be established by the agent's own acts and declarations. *Id.*

The burden of proof in establishing apparent authority rests on Mr. Marvin. Apparent authority depends upon objective manifestations made by the principal. *King v. Riveland*, 125 Wash. 2d 500, 507 (1994). With apparent authority, the principal's objective manifestations are made to a third party. *Id.* In this case, the third party would be Mr. Marvin.

> Likewise, as in the case of [actual] authority, apparent authority can be created by appointing a person to a position, such as that of manager or treasurer, which carries with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position, regardless of unknown limitations which are imposed upon the particular agent.

*King* at p. 507 – 508, *citing Smith v. Hansen, Hansen, & Johnson, Inc.*, 63 Wash. App. 355, 365, 818 P.2d 1127 (1991).

Plaintiff has made no showing regarding what, if anything, State Farm did that lead Mr. Marvin to believe that Mr. Copat could void the insurance cancellation letter and, on his own, continue homeowners coverage but with an increased deductible. In fact, Mr. Marvin had no contact with anyone from State Farm after he received the cancellation notice. His only contact was with State Farm's agent, Mr. Copat. During that contact, it is undisputed that Mr. Copat told the plaintiff that based on Mr. Copat's experience "underwriting would not reissue the policy unless he provided documentation from a licensed contractor stating either that the roof had a remaining life of at least five years, or that the contractor would replace the roof within 60 days."

Dkt. 20-1, p. 3. While apparent authority can only be found based on manifestations of the principal, it is clear here that the uncontradicted statements of Mr. Copat make it clear that he did not have the authority to revoke the policy cancellation. It appears that Mr. Marvin understood this as he asked Mr. Copat to contact underwriting to see if they would change their minds. *Id.* Further, the mere appointment of Mr. Copat's as its agent for the purpose of soliciting insurance applications (R.C.W. 48.17.010(6)) does not carry with it generally recognized duties that include the authority to void a notice from the insurer that the policy of insurance will be cancelled on a specific date and Mr. Marvin presents no evidence to support that assertion.

The Court concludes that the plaintiff has failed to create a material issue of fact that would support his assertion that Mr. Copat had the apparent authority to undo the cancellation or revise the homeowner's insurance policy.

PROMISSORY ESTOPPEL

Promissory estoppel renders a promise made without consideration enforceable. There are five prerequisites for recovery under the theory of promissory estoppel:

> (1) a promise that (2) the promisor should reasonable expect to cause the promisee to change his position and (3) that does cause the promise to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only be enforcement of the promise.

*King v. Riveland,* 125 Wash.2d 500, 506, 886 P.2d 160 (1994).

The undisputed and material facts presented by the parties leads the court to the conclusion that Mr. Copat did not make a "promise" to Mr. Marvin. A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Elliott Bay Seafoods, Inc., v. Port of Seattle,* 124 Wash. App. 5, 13, 98 P.3d 491 (Div. I, 2004).

The "promise" that Mr. Marvin relies on is the statement he attributes to Mr. Copat that

"the policy **could** remain in place before the work on the roof was done" but that the deductible would be increased from one percent to two percent.

The undisputed facts show that Mr. Copat told Mr. Mavin that, based on his experience, he did not believe that underwriting would reissue the policy unless Mr. Marvin provided documentation from a licensed contractor stating either that the roof had a remaining life of five years, or that the contractor would replace the roof within 60 days. Mr. Marvin asked Mr. Copat to contact underwriting to see if they would change their minds. Mr. Copat agreed to do this and the notes in the underwriting file confirm that Mr. Copat did contact underwriting.

Mr. Marvin has never denied that Mr. Copat told him of the need to provide additional documentation for underwriting's consideration. Also, during his Examination Under Oath taken on July 18, 2013 he confirmed that the note in the underwriting file was consistent with his memory of what was discussed with Mr. Copat. The note in the underwriting file confirms that State Farm would reconsider the cancellation upon receipt of additional information from Mr. Marvin. This note does not confirm reinstatement of insurance but rather identifies the need for additional information in order to "reconsider" the cancellation.

Finally, the "promise" that Mr. Marvin identifies includes the word "could" which is a word "used to indicate possibility." *The New Oxford American Dictionary, 2001 ed.* The use of the word "could" is consistent with the fact that Mr. Copat identified additional information that would be needed in order for underwriting to reconsider its position – specifically the documentation regarding the remaining life of the roof or anticipated repair date.

The Court concludes, based on the undisputed evidence that Mr. Marvin was told by Mr. Copat that underwriting would be the decision maker as to whether insurance would be extended. He was also told that the insurance **could** be extended **if** he provided the

documentation identified by Mr. Copat.  Mr. Marvin never provided the necessary documentation for State Farm to even reconsider the cancellation of the homeowners policy.

Finally, it is undisputed that Mr. Copat told Mr. Marvin that unless he "received something from State Farm in writing stating that they were going to cover the risk, Mr. Marvin needed to move forward with the understanding that a cancellation was in place." Dkt. 20-1, p 3 – 4.  This statement along with Mr. Marvin's request that Mr. Copat contact underwriting to see if they would change their mind make it clear that Mr. Copat never represented to Mr. Marvin that he had any authority to reverse the cancellation letter from State Farm.  Even if Mr. Marvin chose to only focus on portions of Mr. Copat's statements, it is clear that Mr. Copat made no statement that he should reasonably expect to cause Mr. Marvin to change his position to Mr. Marvin's detriment.

The Court concludes that the plaintiff has failed to prove the elements of promissory estoppel.

BREACH OF CONTRACT

It appears that the breach of contract theory being pursued by the plaintiff is based on the theory that State Farm orally represented, by Mr. Copat's statements to Mr. Marvin, that it would continue the insurance policy with certain changes (increasing the deductible from one percent to two percent) and that this agreement is reflected in the note found in the underwriting file.   Mr. Marvin concludes that this oral agreement was then breached by State Farm when it denied coverage.

R.C.W. 48.18.190 states: "No agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made part of the policy." Mr. Marvin suggests that this statute is only utilized to *enforce* the insurance contract relying on language in *National Indemnity Co., v. Smith-Gandy, Inc.*, 50 Wash. 2d 124, 309 P.2d 742.  The Court in

*National Indemnity*, however, did not restrict the statute in such a way. Rather, it confirmed that parol evidence is not admissible to vary the terms of a written instrument and that R.C.W. 48.18.190, part of the state insurance code, also prohibited there being any change to an insurance policy unless the change is in writing and made a part of the contract. The note in underwriting is not a change in the contract of insurance and was never made a part of the contract.

Plaintiff argument relies on the assumption that Mr. Copat's "promise" authorized a continuation of the policy of insurance. The Court has found that this was not the case. The plaintiff has failed to present evidence to support a claim for breach of contract.

BAD FAITH – MR. COPAT

Mr. Copat asserts that Plaintiff cannot maintain a claim of bad faith against him and the Plaintiff does not address this in his response. It is clear, however, that a claim of bad faith can only be asserted against State Farm. The Defendant's motion to dismiss the bad faith claim against Mr. Copat is GRANTED.

BAD FAITH – STATE FARM

Mr. Marvin asserts his bad faith claim against State Farm based on the fact that State Farm took an Examination Under Oath (EUO) of Mr. Marvin pursuant to the terms of the policy of insurance. He argues that the right to take an EUO only exists if there is an insurer-insured relationship. Therefore, by taking the EUO State Farm was admitting to that relationship and then by denying coverage it reversed its position and asserted that there was no insurer-insured relationship. Plaintiff asserts that because of this selective enforcement of policy provisions that State Farm therefore owed "Marvin a duty to act in good faith in processing, and ultimately paying, under the terms of that policy." Dkt. 22, p. 16.

An insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith. *Truck Ins. Exch. V. Vanport Homes, Inc.*, 147 Wash. 2d 751, 765, 58 P.3d 276 (2002). To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous or unfounded. *Overton v. Consol. Ins. Co.*, 145 Wash. 2d 417, 433, 38 P.3d 322 (2002). An insurer is only entitled to a dismissal on summary judgment of a bad faith claim if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances, or the insurance company is entitled to prevail as a matter of law on the facts construed most favorably to the nonmoving party. *Smith v. Safeco Insurance Company,* 150 Wash.2d 478, 484, 78 P.3d 1274 (2003) *citing Ruff v. County of King,* 125 Wash.2d 697, 703-704, 887 P.2d 886 (1995).

In its Reply, State Farm notes that it is required by Washington law and the policy of insurance to investigate claims, and that the EUO is a key part of an investigation. R.C.W. 48.18.460 provides: "If a person makes a claim under a policy of insurance, the insurer may require that the person be examined under an oath administered by a person authorized by state or federal law to administer oaths." In addition, the policy under which Mr. Marvin made his claim permits State Farm to conduct an examination under oath for any "loss to which this insurance **may** apply." Dkt. 20-3, p 25 – 26 (emphasis added). As noted by State Farm, an insurer may be liable for bad faith failure to investigate a claim, even if the insurer is ultimately correct in determining coverage does not exist. *Coventry Assocs. V. American States Ins. Co.*, 136 Wn.2d 269, 279, 961 P. 2d 933 (1998). Consequently, investigation of a claim does not result in a waiver of the insurer's rights.

The facts show that State Farm sent Mr. Marvin a reservation of rights letter dated April 17, 2013 noting the following coverage issue: "It is questionable whether there was a policy in force at the time of the loss." Dkt. 26-1, p. 5. In the letter State Farm affirmed that it would

continue its investigation of the claim to determine whether there was coverage. State Farm was required to conduct this investigation. The fact that it did so does not then lead to the conclusion that it selectively enforced certain portions of the insurance policy to the detriment of the insured nor does it require the conclusion that State Farm should then be prohibited from denying coverage. The plaintiff has provided no other facts to support its claim of bad faith against State Farm. The Defendant's motion to dismiss the bad faith claim is therefore GRANTED.

CONCLUSION

Based on the above, the Defendants' motion for summary judgment is granted and all of Plaintiff's claims are dismissed.

Dated this 10th day of April, 2015.

Karen L. Strombom
United States Magistrate Judge